UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MOHNS, INC.,**
        Appellant,

    v.                                      Case No. 11-C-1133

**JOHN M. WILSON a/k/a
J. MICHAEL WILSON and
CHRISTINE A. WILSON f/k/a
CHRISTINE A. PETERSON**

and

**BRUCE A. LANSER, Bankruptcy Trustee,**
        Appellees.

---

## DECISION AND ORDER

Mohns, Inc. ("Mohns") appeals two orders entered by the bankruptcy court during John and Christine Wilson's ongoing Chapter 7 proceeding. In one order, which is entitled "Order Regarding Homestead Exclusion," the bankruptcy court ruled that Mohns's claim against the estate is not one for the "purchase price" of the Wilsons' home within the meaning of Wis. Stat. § 815.18(12). See Order of Oct. 14, 2011, ECF No. 1-2 at 111. In the other order, entitled "Order Approving Trustee's Motion to Compromise Claim by the Estate and for Abandonment," the bankruptcy court approved the Chapter 7 trustee's decision to settle certain claims against the debtors involving their personal property and to abandon the estate's interest in other items of personal property. See Order of Oct. 13, 2011, ECF No. 1-2 at 112–13.

## I. BACKGROUND

Mohns is a building contractor that built the house in which John and Christine Wilson reside. Although many of the facts surrounding Mohns's agreement to build the Wilsons' house are not in the record, it appears that Mr. Wilson and the owner of Mohns were friends and that Mohns did not follow the formalities it might usually follow when agreeing to build a house for a client, such as obtaining a construction lien. See Tr. of Waukesha County Circuit Court Trial at 30–31, ECF No. 1-1 at p. 182–83; Tr. of October 12, 2011 Bankruptcy Hearing at 23, ECF No. 3-2. At some point, a dispute between Mr. Wilson and Mohns arose, and the Wilsons refused to pay the balance Mohns claimed was due. In 2009, Mohns filed suit in Waukesha County Circuit Court against the Wilsons to recover the balance due. After a trial, the Waukesha court found in Mohns's favor and awarded judgment in the amount of $136,661.89. With interest, the amount that the Wilsons owe Mohns pursuant to the judgment is $142,899.00. After the court entered judgment, the Wilsons filed for bankruptcy under Chapter 7.

In their bankruptcy schedules, the Wilsons listed $1,109,341.55 in assets, including the house at issue, which they valued at $473,754.00. The Wilsons elected to claim exemptions under Wisconsin law pursuant to 11 U.S.C. § 522(b)(3), and they each claimed a $75,000 homestead exemption pursuant to Wis. Stat. § 815.20, for a total of $150,000.

Mohns is the Wilsons' largest unsecured creditor. On April 15, 2011, it filed objections to the Wilsons' claimed exemptions, including the homestead exemption. Mohns argued that the exemption should not apply to its claim because it is one for the "purchase price" of the property and therefore falls within an exclusion to the exemption.

See Wis. Stat. § 815.18(12). Mohns also pointed out that the Wilsons had entered into an agreement to keep their property separate and that John Wilson was the only debtor who owned the house. Therefore, argued Mohns, Christine Wilson was not entitled to a separate homestead exemption.

At a hearing on October 12, 2011, the bankruptcy court made an oral ruling in which it found that Mohns's claim was not one for the purchase price of the house, and that therefore Mohns's claim did not fall within the exclusion to the exemption. See Tr. of October 12, 2011 Hearing at 19–21, ECF No. 3-2. The court reserved ruling on the issue of whether Christine Wilson was entitled to claim a homestead exemption. Id. at 21–26. On October 14, 2011, the court entered a written order confirming its ruling as to the exclusion:

> IT IS HEREBY ORDERED that the claim of Mohns, Inc. is not a claim of a "purchase price" within the meaning of § 815.18(12), Wis. Stats.[,] and the homestead exemption of the Debtors is not limited by reason of, or subject to, the Mohns, Inc. claim.

ECF No. 1-2 at p. 111. This is one of the orders that Mohns appeals. On January 9, 2012, while the present appeal was pending, the bankruptcy court entered a written decision and order in which it denied Christine Wilson's claimed homestead exemption. See ECF No. 151 in E.D. Wis. Bankr. Case No. 11-21802. No one appealed that order.

The other order Mohns appeals concerns the Wilsons' personal property. Between June 16 and 18, 2011, the Chapter 7 trustee filed a motion to abandon certain items of personal property and two motions to compromise the estate's claims with respect to other items of personal property. Before the trustee filed those motions, Mohns had filed an objection in which it claimed that the Wilsons had undervalued their personal property.

3

The bankruptcy court had not ruled on Mohns's objection by the time the trustee filed its motion, and so Mohns filed a separate objection to the trustee's motions in which it argued that the assets were undervalued. The bankruptcy court held two hearings on the trustee's motions and Mohns's objections: one on August 24, 2011, and the other on October 12, 2011.

There were essentially two groups of personal property at issue in the trustee's motions and Mohns's objections: (1) three cars, and (2) various household items.[1] Regarding the cars, the trustee proposed to compromise the estate's claim with respect to two of them and to abandon the third. Mohns objected to these proposals on the ground that the cars were worth significantly more than $19,018, the amount that the trustee thought they were worth. Mohns was so convinced of this that it made an offer to purchase the cars for $25,900. However, Mohns made this offer contingent on the Wilsons' allowing Mr. Mohns to personally inspect the vehicles. After the August 24 hearing, Mr. Mohns inspected the cars and decided that they were not worth as much as he thought. He therefore lowered his offer to $22,000. He also informed the trustee that his offer was contingent on the trustee's removing the cars from the Wilsons' household and putting them in storage pending notice of the deal to other creditors. At the October 12 hearing, the trustee informed the court of Mohns's revised offer and stated that he did not want to

---

[1]The motions and the objections also related to the Wilsons' jewelry. However, Mohns did not object to the valuation of the jewelry; instead, it thought that some items of jewelry were missing. The bankruptcy court resolved this issue by noting that the motions under consideration related only to the jewelry that the Wilsons had disclosed, and that if additional jewelry turned up it would be part of the estate. See Aug. 24, 2011 Hearing at 77, ECF No. 3-1. I do not understand Mohns to be appealing any issues with respect to the jewelry.

4

accept it. In the trustee's opinion, the administrative hassle associated with storing the cars pending notice of the sale was not worth the additional $2,982 that the offer would generate for the estate. The bankruptcy court agreed with the trustee and approved the compromise concerning the two cars and the abandonment of the third.

With respect to the household items, the trustee proposed to compromise the estate's interest in this property in exchange for a payment from the debtors. Mohns objected to this on the ground that the trustee had undervalued the property. According to Mohns, if the trustee liquidated all of the household items, he could generate $9,000 for the estate over the amount of the proposed compromise. The trustee responded to this by informing the court that the only practical way to liquidate the household items would be to conduct the equivalent of an estate sale, and that he did not think he had the authority to conduct an estate sale in the Wilsons' home. The trustee stated that if he could not hold an estate sale, he would have to remove all of the household items from the home and put them in another facility before he could sell them. He explained that it would be "ridiculous" to take these steps in the hopes of generating an additional $9,000 for the estate. See Tr. of Aug. 24, 2011 Hearing at 34, ECF No. 3-1. Eventually, the Wilsons agreed to pay an additional $2,500 to resolve Mohns's objections. The bankruptcy court concluded that in light of this additional payment from the Wilsons, the trustee's proposed compromise was in the best interests of the estate.

## II. DISCUSSION

**A.     Jurisdiction**

Before I can proceed to the merits, I must confirm that I have jurisdiction. In its jurisdictional statement in its brief, Mohns asserted that I have appellate jurisdiction under 28 U.S.C. § 158(a)(1), which states that district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. However, Mohns did not explain in its brief why the orders under review should be considered final. In their briefs, the Wilsons and the Chapter 7 trustee did not elaborate on Mohns's jurisdictional statement and agreed that the orders under review are final. I was not convinced that the orders are final, and I held a hearing for the purpose of exploring that issue further. I also allowed the parties to file written submissions. The trustee has not filed a written submission and continues to agree with Mohns that the order approving the compromise and abandonment is final. The Wilsons have filed a written submission asserting that the homestead order is not final.

Mohns contends that the homestead order is final because cases hold that orders granting or denying exemptions are appealable as final orders. See In re Yonikus, 996 F.2d 866, 868 (7th Cir. 1993); In re Barker, 768 F.2d 191, 193–94 (7th Cir. 1985). However, the homestead order does not technically grant or deny any exemption; it provides only that if the exemption is granted it is good against Mohns's claim. Moreover, at the time the bankruptcy court entered the order, there was still an issue outstanding between Mohns and the Wilsons concerning the exemption: whether both of the Wilsons could claim a homestead exemption or whether only Mr. Wilson could. However, the bankruptcy court resolved that issue on January 9, 2012, and thus as things stand the bankruptcy court has "finally determined all of the issues regarding the claimed exemption." Barker, 768 F.2d at 193. Although Mohns filed its notice of appeal at a time when an issue

6

concerning the homestead exemption was still pending, that does not present a problem because an appeal from a non-final order can be "saved" by subsequent events that establish finality. In re Rimsat, Ltd., 212 F.3d 1039, 1044 (7th Cir. 2000). Thus, I conclude that the homestead order is final.

Turning to the order approving the compromise and the abandonment, I conclude that it is final because it conclusively resolved all claims concerning the assets it disposed of—i.e., the cars, household items, and other items of personal property. See In re Xonics, Inc., 813 F.2d 127, 129–30 (7th Cir. 1987) (holding that orders conclusively disposing of claims to assets are final for bankruptcy purposes).

Before turning to the merits, I note that Mohns is currently involved in other disputes with the trustee and the debtors in the bankruptcy proceeding: it is involved in an ongoing adversary proceeding seeking to deny the Wilsons a discharge, see E.D. Wis. Bankr. Case No. 11-02334, and it has objected to the trustee's decision to abandon the estate's interest in the house that is the subject of the present appeal, see March 19, 2012 Letter from Trustee and April 5, 2012 Letter from Mohns in Bankr. Case No. 11-21802, Bankr. ECF Nos. 153 & 156. Thus, this is not a case in which the orders under review are final in the sense that they resolved all of the claims of one creditor. See In re Jartran, Inc., 886 F.2d 859, 862–63 (7th Cir. 1989) (noting that general rule is "one appeal per creditor" and that order is generally not final when appealing creditor has other claims pending in the bankruptcy proceeding). However, an order can be final for purposes of appeal even though the appealing creditor has other claims pending in the underlying bankruptcy. See In re Resource Tech. Corp., 528 F.3d 467, 474 (7th Cir. 2008). As discussed above, the Seventh Circuit has held that the kinds of orders under review in this case—i.e., orders

7

resolving all issues relating to a claimed exemption and orders conclusively disposing of claims to assets—are final. Thus, even though Mohns has other issues pending in the Wilsons' bankruptcy, I believe that the orders under review are final. To the extent there is any doubt about whether the orders are final, I note that in the event the orders were deemed non-final, I would exercise my discretion to hear an interlocutory appeal under 28 U.S.C. § 158(a)(3).

**B.  Homestead Order**

Under Wisconsin law, a homestead—i.e., a dwelling and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, see Wis. Stat. § 990.01(14)—is generally exempt from execution up to $75,000. See Wis. Stat. § 815.20(1). However, an exception provides that "[n]o property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property." Wis. Stat. § 815.18(12).[2] Mohns argues that its claim against the estate is for the purchase price of the Wilsons' home, and that therefore the Wilsons' homestead exemption cannot be used against Mohns's claim.

The Wilsons argue that a fee for the services and materials necessary to erect a house on land already owned does not fit within the plain meaning of "purchase price." I disagree. The term "purchase" is broad enough to encompass a wide variety of

---

[2]The full text of Wis. Stat. § 815.18(12) is as follows:

> No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

8

transactions. In Novell v. Faulk, 139 S.W.2d 428, 429–30 (Ky. 1940), for example, the court had no trouble concluding that a debt created for the purpose of erecting a house on vacant land was a debt created for the "purchase" of a home, and that therefore the creditor's claim was for "purchase money." In other cases, courts have held that claims for the cost of supplies used to grow crops are claims for the "purchase money" of the crops. Moseman v. Comer, 127 S.E. 406, 407 (Ga. 1925); Tift v. Newsom, 44 Ga. 600, 1872 WL 2464 at *1–2 (Ga. 1872). These cases also recognize that a landlord's claim for rent can be considered a claim for the purchase money of a homestead. Moseman, 127 S.E. at 407.

The general principle that can be derived from these cases is that a debtor cannot claim property as exempt until he has paid for it. Cf. Novell, 139 S.W.2d at 429–30 ("It seems to be the settled rule by the trend of authorities that no homestead is acquired in property until the same is paid for."). That is, when a person borrows money or is advanced some other form of consideration from another for the purpose of obtaining specific property, the person cannot claim that property as exempt when the other attempts to collect the money or his fee. That is the principle behind Wis. Stat. § 815.18(12)'s exclusion of claims for the purchase price from exemptions. Accordingly, the term "purchase price" must be construed to encompass the present situation, in which the Wilsons would have had nothing but a vacant lot—and thus no homestead to claim as exempt in the first place—but for the services and materials provided by Mohns.

**C.     Order Approving Compromise and Abandonment**

9

Under 11 U.S.C. § 554, a trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. Under Federal Rule of Bankruptcy Procedure 9019(a), the bankruptcy court may approve a "compromise or settlement." The order under review in this case involved both an abandonment and a compromise: the order approved an abandonment to the extent it approved the trustee's decision to abandon the estate's interest in certain assets, and it approved a compromise to the extent it approved the trustee's decision to release the estate's interest in other assets in exchange for a cash payment from the debtors. The bankruptcy court's decision to approve the abandonment and its decision to approve the compromise are reviewed for abuse of discretion. In re Doctors Hospital of Hyde Park, Inc., 474 F.3d 421, 426 (7th Cir. 2007) (order approving compromise reviewed for abuse of discretion); In re Johnston, 49 F.3d 538, 540 (9th Cir. 1995) (order approving abandonment reviewed for abuse of discretion).

As noted in the background section of this opinion, the compromise and abandonment order disposed of two groups of personal property: the three cars and the household items. The bankruptcy court did not abuse its discretion in approving the trustee's decisions with respect to either of these groups. The court's approval of the trustee's decision not to accept Mohns's $22,000 offer for the cars was reasonable. The court reasonably determined that the additional $2,982 the offer would have brought into the estate was not worth the hassle of storing the cars while the trustee gave notice of the offer to other creditors. Now, maybe the hassle associated with storing the cars was only slight, but the gain to the estate was likewise slight. While I may not have made the same decision were I in the bankruptcy judge's place, I cannot say that the bankruptcy judge

10

abused his discretion. See In re Doctors Hospital, 474 F.3d at 426 (recognizing that bankruptcy court is in a better position "to consider the equities and reasonableness of a particular compromise").

Likewise, the bankruptcy court acted reasonably in approving the compromise involving the household items. Mohns informed the bankruptcy court that if the trustee liquidated the Wilsons' entire household he could generate $9,000 for the estate over the amount that the Wilsons were proposing to pay to compromise the estate's interest in the items. The trustee informed the court that Mohns's calculations were premised on the trustee's holding an estate sale in the Wilsons' home, and that he thought he had no authority to hold such a sale.[3] The trustee said that because an estate sale was not possible, he would have to move the items to a different facility before he could liquidate them, and that it would have been "ridiculous" to go through that much effort in the hopes of generating an additional $9,000 for the estate. Ultimately, the bankruptcy court suggested that the Wilsons pay an additional $2,500 to settle the estate's interest in the household items, and after the Wilsons agreed to make this payment the court approved the compromise. That was not an abuse of discretion.

Mohns seems to think that the bankruptcy judge abused his discretion with respect to the cars and the household items because he acted "summarily." See Mohns's Br. at 23, ECF No. 5. However, Mohns does not point to any specific step the bankruptcy judge should have taken before making his decision or any important fact that the bankruptcy judge overlooked. Based on the record before me, it appears that the judge apprised

---

[3]Mohns does not argue that the trustee was wrong to think that he could not have held an estate sale in the Wilsons' home.

11

himself of all facts necessary to evaluate the trustee's proposals and made informed, reasonable decisions. Accordingly, those decisions must stand. See In re Am. Reserve Corp., 841 F.2d 159, 162 (7th Cir. 1987).

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the bankruptcy court's Order Regarding Homestead Exclusion is **REVERSED**, and that its Order Approving Trustee's Motion to Compromise Claim by the Estate and for Abandonment is **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 11th day of July 2012.

        s/ Lynn Adelman
        LYNN ADELMAN
        District Judge